JOHN S. COVINGTON, Judge.
The Board of Regents, hereafter “Regents”, a Constitutional agency of the state, sued the Board of Trustees for State Colleges and Universities, hereafter “Trustees”, another Constitutional agency of the state, all members of the Trustees, the Trustees’ Executive Director and Secretary, and the University of Southwestern Louisiana, to nullify the April 27, 1984 motion changing the University’s name. The District Court issued a temporary restraining order on May 10, 1984 and, after a hearing on the suit for declaratory judgment and permanent injunction, declared the name change action of the Trustees unconstitutional. Defendants appealed the judgment rendered on May 22 and signed May 24, 1985, asserting that Article 5, Section 10(A)(1) confers appellate jurisdiction on us. The Regents filed a motion to dismiss this appeal because the Regents believed the enactment of Act 656 of 1984, effective September 3, 1984, rendered moot the issues raised by the Trustees’ appeal. The Regents’ motion was denied. 460 So.2d 80 (La.App.1st Cir.1984).
FACTS
The Trustees, at a regularly scheduled meeting held on April 27, 1984, adopted a motion to change the name of the University of Southwestern Louisiana to the University of Louisiana. The Trustees “don’t *933 operate ... by resolution, as some of the other boards do, but ... there was a motion, a second, and the Board approved the moved action.”[1]
DISTRICT COURT PROCEEDINGS
The Trial Court declared “the action of the [Trustees] ... at its meeting of April 27,1984, to change the name of the University of Southwestern Louisiana to the University of Louisiana ... to be an action not within the powers vested in the ... Trustees by the Constitution and laws of ... Louisiana, and therefore the ... action is hereby declared to be null and void and without effect” and enjoined defendants, collectively and individually, from using the name “University of Louisiana” to identify the University of Southwestern Louisiana. The Trial Judge assigned extensive oral reasons for his judgment and held, in pertinent part, as follows:
This Court finds that the Constitution, in using the words “supervision and management” and statutes using the words “supervision and management,” do not entail the right to change the name of a state university. Inasmuch as the Constitution has not given those powers to the Board of Trustees, Board of Regents, or any other board that I can find, then those powers are vested in the Legislature.
... I ... declare that neither the Board of Trustees nor the Board of Regents, but only the Legislature, has the authority to change the name of a state university.
APPELLATE JURISDICTION
None of the parties before this Court, including plaintiff-appellee Regents, amicus curiae, Board of Supervisors of Louisiana State University and Agricultural & Mechanical College, or amicus curiae, University of Southwestern Louisiana Alumni Association, question defendants-appellants’ jurisdictional statement, in the original brief, that we have “jurisdiction over this matter under Article V Section 10 of the Louisiana Constitution, which grants Courts of Appeal appellate jurisdiction over all civil matters decided within its circuit.” However, the Court of Appeal, on its own motion, is required to notice its lack of jurisdiction. C.C.P. art. 2162; Thomas v. Department of Corrections, 430 So.2d 1153 (La.App. 1st Cir.1983), writs denied, 435 So.2d 432 (La.1983) and 438 So.2d 566 (La.1983). During oral argument we questioned counsel for both Trustees and Regents whether this Court has appellate jurisdiction of this matter. We granted both sides five days to submit supplemental briefs on appellate jurisdiction. Our independent research prior to oral argument revealed the ¡existence of Merchant v. Fuselier, Chapman v. Bordelon, Melancon v. State Board of Education, Theriot v. Terrebonne Parish Police Jury, Gilbert v. Catahoula Parish Police Jury, and Benelli v. City of New Orleans, cited infra, and we suggested both parties use Melancon v. State Board of Education as a point of departure in addressing the issue of appellate jurisdiction in their briefs.
Article 5, §§ 5(D) and 10(A) of the Louisiana Constitution of 1974 provides, in pertinent part, as follows:

Section 5(D)

In addition to other appeals provided by this constitution, a case shall be ap-pealable to the supreme court if (1) a law or ordinance has been declared unconstitutional or ...” .(Emphasis supplied.) Section 10(A)
“Except as provided by this constitution, a court of appeal has appellate jurisdiction of (1) all civil matters, ...” (Emphasis supplied.)
Article VII, § 10 of the Louisiana Constitution of 1921 provided, in pertinent part, that:
“The following cases only shall be ap-pealable to the Supreme Court:
“(2) Cases in which an ordinance of a parish, municipal corporation, board or subdivision of the state, or a law of this *934 state has been declared unconstitutional;” (Emphasis supplied.)
Defendants-appellants’ supplemental brief succinctly states that Melancon v. State Board of Education, 249 La. 604, 188 So.2d 419 (1966), which interpreted “ordinance”, as used in Article VII, Section 10, to include “resolutions of a state board ... remains valid today” and states further that the action of the Trustees changing the name of the institution “could be a law or ordinance under the recent Bennelli [sic] case”, decided by the Supreme Court of Louisiana on September 10, 1986. 474 So.2d 1293 (1985). Trustees assert the validity of Melancon “although the language of Art. VII, Sec. 10” of the 1921 Constitution contained the prepositional phrase “of a parish, municipal corporation, board or subdivision of this state” following the term “ordinance”. The prepositional phrase was deleted from the direct appeal provision of the 1974 Constitution. Regents’ supplemental brief strongly urges us to believe the elimination of the quoted prepositional phrase from the wording of the 1974 Constitution was “significant and deliberate; it can only be interpreted as an explicit change of the then-existing law as represented by the Melancon decision.” Regents argue that:
“... The change in the language of the equivalent jurisdictional section of the 1974 Constitution evidences the clear intention of the Constitutional Convention delegates to eliminate from the appellate jurisdiction of the Supreme Court cases wherein the action of a state board, such as the Board of Trustees, has been declared unconstitutional.”
In support of its argument, Regents rely on language from Benelli, to wit:
... The wording of this constitutional provision and the convention debates make it clear that an. appeal of right pertaining to an ordinance may be taken only when the legislative act of a governing body, a body which exercises the legislative functions of a political subdivision, has been declared unconstitutional....
and emphasizes its point by stating the Court, immediately after the quoted language, referenced Article 6, §§ 10 and 44(4), the latter of which “defines ‘governing authority’ of a political subdivision” which it strenuously contends “the Board of Trustees is not”, but asserts, instead, that “it is a state ‘board’, an agency of the executive branch of state government.” Regents thus assert that the holding of unconstitutionality of “the enactment of this state board”, Trustees, is “clearly distinguished from an enactment of the governing authority of a political subdivision”, thus “is not appealable to the Supreme Court.” (Emphasis by Regents.)
Even a cursory reading of Article 6, §§ 10 and 44(4) reveals that they are inapplicable to the present case. That Article is devoted exclusively to the matter of local government. Preceding the subsections of § 44 defining “political subdivision” and “governing authority” is the introductory phrase “As used in this Article”. Regents correctly state that Trustees is an agency of the executive branch of state government. Although Regents does not cite authority for its executive branch categorization of Trustees, the authority for it is Article 4, § 1(A), Constitution of 1974, and legislation enacted to execute the reorganization mandate of § 1(B) and (C), namely La.R.S. 36:1 et seq., especially §§ 4(A)(14), 642(B) and (D)(1), 651(D)(1).
As a prerequisite to addressing the merits of this appeal we must first ascertain whether this Court has appellate jurisdiction. Crucial to that initial determination is whether the Trustees’ “motion” or action changing the name of the university in Lafayette is an “ordinance” within the purview of Article 5, Section 5(D) because that provision vests exclusive appellate jurisdiction in the Supreme Court if an ordinance has been declared unconstitutional. Theriot v. Terrebonne Parish Police Jury, 436 So.2d 515, 517 (La.1983); Gilbert v. Catahoula Parish Police Jury, 404 So.2d 291, 292 (La.App. 3rd Cir.1981).
In Merchant v. Fuselier, 365 So.2d 854 (La.App. 3rd Cir.1978), writ denied, 368 *935 So.2d 137 (La.1979), the Court, per Watson, J, presently Associate Justice of the Supreme Court, affirmed the district court holding that four former officeholders of a municipality had validly been ousted by a resolution of the mayor and board of aider-men, and observed as follows:
“... A public corporation can act by ordinance or resolution. There is no substantial difference between the two. ...” at 856.
In Chapman v. Bordelon, 242 La. 637, 138 So.2d 1 (1962), the Supreme Court of Louisiana construed the term “ordinance” in the context of a municipality’s board of aldermen dismissing employees by a motion which the mayor vetoed. The District Court’s judgment that the mayor did not have the power to veto the motion was reversed by a majority decision of the Court of Appeal. In reversing the Court of Appeal and accepting the views of the dissenting judge, the Court, per Justice Hawthorne, reasoned in part, as follows:
... [A]s the judge of the Court of Appeal who dissented in the instant case said, “ordinance” is often used as a generic term which encompasses all of the acts of a municipal board or council whether administrative or legislative in nature. In support of this statement he cited McQuillian, (sic) The Law of Municipal Corporations (3rd ed. 1949), v. 5, sec. 15.08, pp. 71 ff. McQuillan (sic) points out that technically an ordinance differs from a resolution or other form of expression or action of a municipal legislative body, but that sometimes it is used interchangeably with the words “bylaw”, “resolution”, “regulation”, “order”, etc. Thus it will be seen that the word “ordinance” can have a very broad or quite a narrow meaning; that it can refer to all of the legislative enactments of a municipality, such as motions, resolutions, decrees, laws, etc., or can simply mean a permanent rule of action commonly known as a law.
As we view the matter, the Legislature used the word “ordinance” in ... its broad sense rather than in its narrow one, so as to include both legislative and administrative enactments. ...
138 So.2d at 5. (Emphasis and parentheses supplied.)
In 1966 our Supreme Court held, for the first time, that a resolution is an “ordinance” for the purpose of determining exclusive appellate jurisdiction of the Supreme Court when a resolution is declared unconstitutional in District Court. Melancon v. State Board of Education, 249 La. 604, 188 So.2d 419 (1966). The defendant board in the Melancon case, under the 1921 Constitution, exercised all the powers, duties, and functions of the 1974 Constitution’s education boards, namely, the Board of Elementary and Secondary Education (BESE), the Board of Supervisors of Southern University and Agricultural and Mechanical College, and defendant-appellant Trustees. Article XII, § 4, Louisiana Constitution of 1921; La.R.S. 17:1834(A) and 1954(A); Board of Elementary & Secondary Education v. Nix, 347 So.2d 147, 152 (La.1977).
The Supreme Court held that the District Court ruling declaring the resolution of the state Board of Education to be unconstitutional activated the direct appeal provision of the 1921 Constitution, being Article VII, Section 10(2). In Melancon, Justice Hamiter quoted approvingly from McQuillin, Municipal Corporations, in part, as follows:
... “It is an ordinance still if it is anything intended to regulate any of the affairs of the corporation,” and if it is in substance and effect an ordinance. While there are in some instances and for some purposes, fundamental distinctions between a resolution and an ordinance, there is no such broad distinction between a resolution and other acts of an administrative or quasi-legislative board.
The Court held that:
The term “ordinance, ” as it appears in the aforequoted constitutional provision regulating our appellate jurisdiction with respect to a board of this state, is used in its broad and general *936 sense, rather than in a restricted one; and that it refers to and includes “resolutions” of a state board. Our primary reason for this conclusion is that we know of no way in which such a board acts and functions except by resolutions. Should we apply the narrow meaning to the term “ordinance” herein we would render the constitutional provision meaningless with respect to boards and other subdivisions of the state which act only through and by resolutions.
188 So.2d at 420-421. (Emphasis supplied.)
It is an interesting coincidence that the law firm of co-counsel for defendants-appellants was counsel for plaintiff in Melancon and the Attorney General’s Office was counsel for defendant Board of Education.
In a concurring opinion in Arata v. Louisiana Stadium and Exposition District, 254 La. 579, 225 So.2d 362 (1969), Justice Barham cogently observed that:
We have held that the resolutions of ... districts, subdivisions, and boards of this state are considered to be in parity with the ordinances of municipalities and parishes for the purpose of determining the applicability of Article 7, Section 10(2), of the Louisiana Constitution. Melancon v. State Board of Education, 249 La. 604, 188 So.2d 419 ... 225 So.2d at 376. (Emphasis supplied.)
Professor Lee Hargrave of the Paul M. Hebert Law Cénter, Louisiana State University, a leading scholar on the subject of the 1974 Constitution, observed, as follows, in discussing the present Article 5, Section 5(D):
Section 5(D) continues mandatory appellate jurisdiction over cases in which “a law or ordinance has been declared unconstitutional.” A committee working draft had proposed that the appellate jurisdiction be limited to cases in which a state law had been declared unconstitutional, but a later draft restored the reference to ordinances, and the convention itself defeated a floor amendment that would have deleted that reference. 37 La.L.Rev. 765, 799-800 (1977).
The Convention Delegate who sought to delete the reference to ordinance, by way of a floor amendment, was Justice Albert Tate, Jr. of the Supreme Court, presently a member of the United States Court of Appeals for the Fifth Circuit, who spoke briefly in support of deletion of any reference to ordinance. He argued, in part, that:
... We’re talking about the mandatory appellate jurisdiction of the Supreme Court, ... The present [Judiciary] committee proposal retains immediate Supreme Court review ... when an ordinance of a drainage board, a city or town, any of the numerous boards we have that have the power to adopt ordinances [has been declared unconstitutional by the district court]....
... [M]y ultimate objection is you have a Supreme Court with an ever-expanding case load. I think you should try to look to the future and provide some stopgap on the mandatory appeals that come there.... Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Vol. 6, pp. 734-735. (Emphasis and bracketed material supplied.)
Delegate Tate’s floor amendment was rejected by a vote of 82 to 27. Records etc., Vol. 6, p. 735.
“The history of a constitutional provision and the record of the debates on it at the constitutional convention may be valuable aids in determining the purpose, intent and meaning of the provision.” Thomas v. Department of Corrections, 430 So.2d 1153, 1155 (La.App. 1st Cir.1983), cert. den. 435 So.2d 432 (La.1983) and 438 So.2d 566 (La. 1983), citing New Orleans Firefighters Association v. Civil Service Commission of City of New Orleans, 422 So.2d 402, 407 (La.1982).
On March 23, 1973 Chief Justice Joe W. Sanders made a presentation to the Committee on the Judiciary of the Constitutional Convention of 1973. In that speech he stated, inter alia, regarding the jurisdiction of the Supreme Court:
*937 For some time careful observers have known that the caseload and work of the Supreme Court has increased many times. The volume is such as to detract from the quality of the Court’s work. It places an unreasonable burden on the members of the Court. A revision of the Court’s appellate jurisdiction is required.
In civil matters, the Supreme Court should have jurisdiction on direct appeal only when a state statute has been declared unconstitutional by the trial court. All other civil matters would follow the regular route through the Court of Appeal.
Records of the Louisiana Constitutional Convention of1973: Committee Documents, Vol. XI, p. 292.
In a memorandum from Delegate Albert Tate, Jr. to “Members of Judiciary Committee, CC/73”, he outlined “Table of Contents-Draft ‘A’ ” and attached thereto a document styled “Draft ‘A’ — with explanatory comments”, followed by the caption, “TENTATIVE WORKING DRAFT PROPOSED TO SERVE AS A POINT OF DEPARTURE ONLY”, which bore an introductory note, reproduced, in part, as follows:
“Note:
“Delegate Tate drafted the following tentative working paper as an aid to discussion of concepts proposed at our meetings. He does not advocate this draft or any of the proposals contained in it, some of which he may not agree with....”
Records etc., Vol. XI, p. 346.
Section 6(d) of Draft “A” stated in part that “The following cases shall be appeala-ble to the supreme court: (1) a case in which a law of this state has been declared unconstitutional; (2) ...” The Comments following Section 6 state, inter alia, that “... the direct civil appeals to the supreme court have been restricted to instances where legislative action has been declared unconstitutional, in view of Chief Justice Sanders’ recommendation.” Records etc., Vol. XI, p. 347. The Committee on the Judiciary amended the proposal contained in “Draft A” by inserting the phrase “or ordinance” and on the floor of the convention Delegate Tate sought, by floor amendment, to delete “or ordinance” but, as stated previously, his motion failed. Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Vol. VI, p. 734-735, August 15, 1973.
The 1921 and 1974 Constitutional provisions dealing with direct appeals of decisions declaring “a law or ordinance” unconstitutional are essentially the same; only stylistic changes were effectuated when old Article VII, Section 10(2) became the new Article 5, Section 5(D)(1). Therefore, the pre-1974 Constitution jurisprudence interpreting old Article VII, § 10(2) has not been altered by the new Article 5, § 5(D)(1).
Article 8, § 6(A) of the 1974 Constitution created the Trustees “as a body corporate” and conferred on it the “supervision and management of state” institutions of higher learning not managed by another management board, “subject to powers vested by this Article in the Board of Regents.”
La.R.S. 17:3351(A) enumerates the powers of “each management board”, including the Trustees, stating in part that each board is empowered to “adopt, amend or repeal rules and regulations necessary or proper for the business of the board and for the government of the colleges and universities comprising its system and for promoting their purposes.”
La.R.S. 17:3356 states the required vote for the adoption of “all official actions” of each management board but does not specify a label or name to be given any board’s “official actions.”
McQuillin, Municipal Corporations, §§ 15.08 and 15.02 (3rd Ed., Rev.1981) contains the following pertinent statement: Section 15.08
... It has been said that there is no substantial difference between a motion and a resolution, that the terms are practically synonymous, and that they are the same, [citing Sylvestre v. St. Landry *938 Parish School Board, 164 La. 204, 113 So. 818].
A resolution has been deemed a “measure” within a charter provision giving the mayor power to veto any measure passed by the board of aldermen, [citing Bierhorst v. Prieto, 131 So.2d 308 (La. App. 1st Cir.1961) ].
Vol. 5, p. 57.

Section 15.02

... [W]here a resolution is in substance and effect an ordinance or permanent regulation, the name given to it is immaterial. Yol. 5, pp. 38-39.
Consistent with the foregoing excerpt from McQuillin’s scholarly treatise is Perkins v. County of Albemarle, 214 Va. 240, 198 S.E.2d 626, 628 (1973), in which the Virginia Supreme Court, as a first step in its decision, observed that:
... The distinction between a “motion” and a “resolution” is simply stylistic; there is no substantive difference.... The substance of the motion [giving rise to the litigation] authorized whatever action might be necessary to carry into effect an annual assessment system, ... Its adoption was a legislative act by a local governing body, ...
198 S.E.2d at 628. (Brackets ours.)
On September 10, 1985 the Supreme Court of Louisiana vacated the order of the Fourth Circuit Court of Appeal which transferred an appeal of an Orleans Civil District Court judgment enjoining enforcement of an executive order of the Superintendent of Police of the City of New Orleans and remanded the appeal to the Court of Appeal “for expeditious hearing and decision”. The executive order regulated “moonlighting” of police officers by requiring them to obtain from their secondary or “moonlight” employers “hold harmless” agreements covering worker’s compensation and tort liability arising from the officers’ “moonlighting” jobs. In transferring the appeal of the judgment enjoining the executive order, the Court of Appeal “found that the trial court had implicitly declared the superintendent’s order or regulation unconstitutional, that the regulation declared unconstitutional was an ordinance, and ... was ‘appealable to the Supreme Court ... ’” The Court, per Justice Dennis, reasoned that the wording of Article 5, Section 5(D) “and the convention debates make it clear that an appeal of right pertaining to an ordinance may be taken only when the legislative act of a governing authority, a body which exercises the legislative functions of a political subdivision, has been declared unconstitutional” and held that “the executive order or regulation promulgated by the police superintendent ... plainly was not a ‘a law or ordinance’ within the meaning of art. V § 5(D).” Benelli v. City of New Orleans, 474 So.2d 1293 (1985). (Emphasis ours.)
Unlike the police superintendent’s executive order in Benelli, the “motion” in the instant case was a “legislative act” of the Board of Trustees, a “governing body” created by Article 8, Section 6 of the Constitution as a “body corporate” and a component of the executive branch of the state government. Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Vol. 5, p. 507, August 1, 1973. The Trustees motion, which purportedly changed the name of the University of Southwestern Louisiana, was clearly a legislative act while the police superintendent’s executive order was purely an exercise of a management function by an official who possessed no legislative powers, as opposed to a multi-member governing board upon which the Constitution conferred both administrative and legislative powers. Cf. B.E.S.E. v. Nix, 347 So.2d 147, 152 (La.1977).
It is insignificant that the Trustees chose to designate their official actions as “motions” rather than “resolutions” as “some of the other boards do”, and as did its predecessor under the 1921 Constitution, the State Board of Education in 1965, when it unconstitutionally acted in attempting to establish, by resolution, a branch of the University of Southwestern Louisiana in the City of New Iberia. Melancon v. State Board of Education, supra. As the Supreme Court stated in Melancon, quoting *939 McQuillin, Municipal Corporations: “if it [official action of a public governing body] is in substance and effect an ordinance” the action “is an ordinance ... if it is anything intended to regulate any of the affairs of the corporation” whether the Trustees be characterized as “an administrative or quasi-legislative board.” 188 So.2d 419, 420. It is substance, not form, which governs.
We hold that this court does not have appellate jurisdiction of this case. The Louisiana Supreme Court has exclusive appellate jurisdiction because the Trustees’ April 27, 1984 motion changing the name of the University of Southwestern Louisiana to the “University of Louisiana”, impliedly declared unconstitutional by the District Court, is an “ordinance” for Article 5, Section 5(D)(1) purposes.
IT IS ORDERED that this case be transferred to the Supreme Court of Louisiana. C.C.P. art. 2162; R.S. 13:4441. Costs in the amount of $1,611.18 are to be assessed against defendants-appellants, Board of Trustees for State Colleges and Universities. La. C.C.P. art. 2164; La.R.S. 13:4442; Gilbert v. Catahoula Parish Police Jury, 404 So.2d 291 (La.App. 3d Cir.1983).
APPEAL TRANSFERRED TO THE LOUISIANA SUPREME COURT.

. Record, Vol. 2, p. 124, Testimony of the Trustees’ Executive Director/Secretary.